`Case 3:06-cv-00012-TEM   Document 73   Filed 10/12/07   Page 1 of 6 PageID 1336`

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

THEODORE HARRIS,

      Plaintiff,

vs.                                      CASE NO. 3:06-cv-12-J-TEM

FLOW INTERNATIONAL CORP.,

      Defendant.

_____

# O R D E R

      This matter is before the Court on Plaintiff's motion in limine (Doc. #36), in which Plaintiff argues that maritime law should apply to the issue of damages in this case. This is a diversity products liability action involving an industrial strength pressure washer manufactured by Defendant Flow International Corporation ("Defendant"), a for profit corporation with its principal office located in Kent, Washington. (Doc. #2, p. 1). Plaintiff, a Florida resident, was allegedly injured by the aforementioned pressure washer while cleaning and scraping the hull of a ship that was being converted from a U.S. Navy vessel to an Environmental Protection Agency vessel. (Doc. #55, p. 4). At the time of the incident, the aforementioned ship was located in a dry dock facility at the Atlantic Marine, Inc. shipyard in Jacksonville, Florida. (Doc. #36, p. 9).

      This order follows a telephonic hearing held before the undersigned on September 25, 2007. At the hearing, counsel for the parties were informed that the Court's admiralty jurisdiction would not apply to the facts of this case. For the reasons stated below, Plaintiff's request that maritime law apply to the issue of damages in this case, contained within Plaintiff's motion in limine (Doc. #36, pp. 9-11), is hereby **DENIED**.

**I. Procedural Matters**

As a preliminary matter, Plaintiff's request that maritime law apply to the issue of damages in this case, contained within Plaintiff's motion in limine (Doc. #36, pp. 9-11) was procedurally improper and untimely.

If Plaintiff wanted federal maritime law to apply to the issue of damages in this case, then Plaintiff should have identified this cause of action as sounding in Admiralty in his complaint. Rule 9(h) of the Federal Rules of Civil Procedure provides that if a claim for relief has multiple jurisdictional bases, one of which is admiralty and the other is not (*e.g.* diversity jurisdiction), the failure to identify a claim as sounding in admiralty in the complaint means a court's admiralty jurisdiction will not apply. *Murphy v. Florida Keys Elec. Co-op. Ass'n, Inc.*, 329 F.3d 1311, 1319 (11th Cir. 2003).

Moreover, Local Rule 7.01(d) states, "Every complaint filed as a Rule 9(h) action *shall* boldly set forth the words 'IN ADMIRALTY' following the designation of the court. This requirement is in addition to any statement that may be contained within the body of the complaint." M.D. Fla. Loc. R. 7.01(d). A plaintiff may, however, amend his or her complaint to invoke a court's admiralty jurisdiction. Fed. R. Civ. P. 9(h); *see also Bodden v. Osgood*, 879 F.2d 184, 186 (5th Cir. 1989).

Here, Plaintiff's request that the Court's admiralty jurisdiction apply was contained within a motion in limine. This was procedurally improper. A motion in limine is "a pretrial request that certain inadmissable evidence not be referred to or offered at trial." BLACK'S LAW DICTIONARY 1038 (8th ed. 2004). If Plaintiff wanted the Court's admiralty jurisdiction to apply to the facts of this case, then Plaintiff should have either set forth the words "IN

ADMIRALTY" in the complaint or moved to amended the complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure, as required by Rule 9(h).

In addition to being improperly brought before the Court, Plaintiff's request that maritime law apply to the facts of this case is untimely because it was made eighteen months after Plaintiff filed the complaint.

## II. Applicability of Maritime Law

Plaintiff's primary contention as to the applicability of maritime law is based on the fact that Plaintiff was injured while cleaning a ship in a dry dock facility. (Doc. #36, pp. 9-10). Specifically, Plaintiff states, "Where the situs of the injury is on or above navigable water, and where the *worker* is engaged in traditional maritime activity, maritime law is applicable." (Doc. #36, pp. 9-10) (*emphasis added*).

Plaintiff's argument that the activity of the plaintiff controls whether maritime law is applicable, might have been persuasive under the test laid out in *Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir. 1973). This test, however, was abrogated by the United States Supreme Court's holding in *Grubart, Inc., v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995).

The *Kelly* test consisted of four inquiries: "[1] the function and roles of the *parties* [including the plaintiff]; [2] the types of vehicles and *instrumentalities involved*; [3] the causation and type of injury; and [4] traditional concepts of the role of admiralty law." *Kelly*, 485 F.2d 520 at 525 (*emphasis added*). Since the Supreme Court's holding in *Grubart*, however, a locality and nexus test must be used when determining whether or not a products liability torts case sounds in admiralty. *Grubart, Inc.*, 513 U.S. 527.

The locality prong of the locality and nexus test concerns whether the injury occurred on or above navigable waters. *Id.* at 534. The nexus prong involves two additional inquiries: (1) whether the incident had a potentially disruptive impact on maritime commerce; and (2) whether the tortfeasor's activity in question is substantially related to a traditional maritime activity. *Id.* at 533, 540.

Concerning the second inquiry of the nexus prong, Plaintiff argues that his activity of cleaning a ship should be considered a "traditional maritime activity," and therefore, satisfy the second part of the nexus prong. (Doc. #36, pp. 9-10). While it is true Plaintiff's activity of cleaning a ship in a dry dock facility would likely be considered a traditional maritime activity, it is not the activities of the Plaintiff that determine whether or not a case will sound in admiralty, but the activities of the alleged tortfeasor. *Grubart, Inc.*, 513 U.S. 527 at 539-40. "We ask whether a *tortfeasor's activity*, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Id.* (*emphasis added*).

The Court, in *Grubart,* went on to state that, in a case where a faulty washing machine set fire to a boat docked at a marina, it was not the activities of the washing machine manufacturer that were at issue, but the activities of the boat owner. *Id.* at 541 (*discussing Sisson v. Ruby*, 497 U.S. 358 (1990)). In *Sisson*, it was the defendant/boat owner's activity of docking the boat at a marina that bore the significant relationship to traditional maritime activity necessary to give rise to the court's admiralty jurisdiction–not the manufacturer's activity of placing an allegedly defective washing machine into the stream of commerce. *See Grubart, Inc.,*513 U.S. 527 at 541. The Supreme Court further

4

noted, in *Grubart,* that it considered the activities of the washing machine manufacturer to be "hardly maritime" in nature (implying maritime law would not have applied to a suit involving only the manufacturer of the washing machine). *Id.*

Furthermore, the holding in *Grubart* stands for the proposition that where there are two alleged tortfeasors, one of which is engaged in a traditional maritime activity and the other is not, admiralty jurisdiction will nevertheless attach, so long as the activity of one of the alleged tortfeasors is traditionally maritime in nature. *Grubart, Inc.*, 513 U.S. 527 at 541. "The substantial relationship test is satisfied when at least one alleged tortfeasor was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident." *Id.*

Here, Plaintiff does not allege that Atlantic Marine is an additional tortfeasor ( whose business activities of repairing/converting ships in dry dock would be considered related to traditional maritime activity). *See Alderman v. Pacific Northern Victor, Inc.*, 95 F.3d 1061, 1065 (11th Cir. 1996) (holding a tortfeasor's activity of converting a ship is a traditional maritime activity). Plaintiff is only suing the manufacturer of an industrial strength pressure washer, whose activities (based on the facts presented by the parties) do not appear to be substantially related to a traditional maritime activity.

### III. Conclusion

Since the four factor *Kelly* test was abrogated in *Grubart* in favor of an approach that considers, not the actions of both parties or the instrumentalities involved, but the actions of the tortfeasor when determining whether federal maritime law should apply to the facts of a particular case, the Court finds that, based on the facts presented by the parties, Defendant's activities, as a manufacturer of an industrial strength pressure washer, are not

substantially related to a traditional maritime activity, such that the reasons for applying special admiralty rules should apply to the suit at hand.

Additionally, the Court finds that Plaintiff's request that maritime law apply to the issue of damages in this case was procedurally improper and untimely. Therefore, Plaintiff's request that the Court's admiralty jurisdiction apply in the instant case is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this  12th  day of October, 2007.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge